AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

**ORIGINAL**



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
An order authorizing the use of a cellular telephone cell site monitor and precision locator for telephone number (504) 296-8951; Electronic Serial Number ("ESN") 270113183514645293

Case No. 15-369

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Eastern____ District of ____Louisiana____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with the Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Use of a Communication Facility in Committing a Felony |
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Robert Baird, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 6, 2015

*Judge's signature*

City and state: New Orleans, Louisiana          Joseph C. Wilkinson, Jr., United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
**Property to Be Searched**

1. The cellular telephone assigned call number **(504) 994-8173** (TARGET TELEPHONE 1) whose wireless service provider is Sprint, registered under the name Joe Sandler, 1624 Franklin Avenue, New Orleans, Louisiana 70117, with service initiated on June 28, 2014; Electronic Serial Number ("ESN") 268435462503308693; and **(504) 296-8951** (TARGET TELEPHONE 2) whose wireless service provider is Sprint, registered under the name Tedd Credo, with service initiated on December 30, 2014; Electronic Serial Number ("ESN") 270113183514645293. TARGET TELEPHONE 1 and TARGET TELEPHONE 2 are hereafter referred together as TARGET TELEPHONES.

2. Information about the location of the TARGET TELEPHONES that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B
**Particular Things to Be Seized**

The REQUESTED INFORMATION includes all information about the location of the TARGET TELEPHONES described in Attachment A, for a period of thirty days, during all times of day and night. "[I]nformation about the location of the TARGET TELEPHONES" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the REQUESTED INFORMATION is within the possession, custody, or control of Sprint, Sprint is required to disclose the REQUESTED INFORMATION to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the REQUESTED INFORMATION unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the TARGET TELEPHONES on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the REQUESTED INFORMATION. *See* 18 U.S.C. § 3103a(b)(2).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE USE OF A CELLULAR TELEPHONE CELL SITE MONITOR AND PRECISION LOCATOR FOR TELEPHONE NUMBER (504) 994-8173; ELECTRONIC SERIAL NUMBER ("ESN") 268435462503308693 AND FOR TELEPHONE NUMBER (504) 296-8951; ESN 270113183514645293 | CASE NO. 15-369<br><br>**FILED UNDER SEAL** |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Robert Baird, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, do hereby depose and state:

A. **AFFIANT'S TRAINING AND EXPERIENCE**

1. I am a Special Agent (SA) with the FBI in New Orleans, Louisiana. I have been employed with the FBI for approximately four years. I am currently assigned to the FBI New Orleans Gang Task Force (NOGTF). This task force includes federal, state, and local officers investigating illegal gang activity in the Metropolitan New Orleans area. I have participated in investigations of illegal narcotics trafficking and racketeering offenses, and am thoroughly familiar with the investigative techniques used in these investigations.

B. **PURPOSE OF THIS AFFIDAVIT**

2. I have personally participated in the investigation set forth below. The facts set forth in this affidavit have either been observed directly by me or relayed to me by assisting FBI agents, officers, and witnesses as described herein. Since this affidavit is submitted only for the limited purpose of securing a search warrant pursuant to Rule 41 of the Federal Rules of Criminal Procedure and an order pursuant to 18 U.S.C § 2703(c)(1)(A), I have not set forth each

and every fact known to me concerning this investigation. I have included what I believe are the facts sufficient to establish probable cause for the search warrant and orders sought.

3. I submit this affidavit in support of the attached application for warrants and orders pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C § 2703(c)(1)(A), authorizing agents of the FBI to ascertain the physical location of the cellular telephone assigned call number (504) 994-8173, hereafter referred to as TARGET TELEPHONE 1, Electronic Serial Number ("ESN") 268435462503308693; and cellular telephone assigned call number (504) 296-8951, hereafter referred to as TARGET TELEPHONE 2, ESN 270113183514645293, with service provided by Sprint for both cellular telephones, for a period of 30 days[1] for each phone (REQUESTED INFORMATION). TARGET TELEPHONE 1 and TARGET TELEPHONE 2 are hereafter referred together as TARGET TELEPHONES. The TARGET TELEPHONES are described herein and in Attachment A, and the REQUESTED INFORMATION to be seized is described herein and in Attachment B.

4. Based on the facts set forth below, the TARGET TELEPHONES have been utilized by MIGUEL JOSEPH (aka "PRETTY"), who is believed to be a heroin dealer operating in the New Orleans, Louisiana, area. Probable cause exists to believe that the REQUESTED INFORMATION will constitute or lead to evidence of offenses involving the trafficking of heroin, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, among other offenses (the TARGET OFFENSES), as well as the identifications of individuals engaged

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the TARGET TELEPHONES at the start and end of any all. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

in the commission of these offenses.

### C. TARGET TELEPHONE 1

5. This request is for an extension of a previously-secured search warrant for the REQUESTED INFORMATION for TARGET TELEPHONE 1. On October 29, 2014, the Honorable Judge Lance M. Affrick in the Eastern District of Louisiana signed a warrant for TARGET TELEPHONE 1, allowing for the seizure of the REQUESTED INFORMATION. Agents were authorized to receive precision location information from Sprint for a 30-day period. This period ended on November 29, 2014. On December 9, 2014, the Honorable Magistrate Judge Michael B. North in the Eastern District of Louisiana signed a 30-day extension of this warrant for TARGET TELEPHONE 1. For the reasons set forth below, I am requesting a second 30-day extension to continue receiving the REQUESTED INFORMATION for TARGET TELEPHONE 1.

6. There is probable cause to believe that the TARGET OFFENSES have been, are being, and will continue to be committed by JOSEPH and others known and unknown. There is probable cause to believe that JOSEPH is using TARGET TELEPHONE 1 to commit the TARGET OFFENSES. I set forth the following facts showing there is probable cause to believe that the geographic location of TARGET TELEPHONE 1 will show evidence of violations of law as set forth in 21 U.S.C. §§ 841(a)(1), 843(b) and 846.

### D. TARGET TELEPHONE 2

7. This request is also for a search warrant for the REQUESTED INFORMATION for TARGET TELEPHONE 2. There is probable cause to believe that the TARGET OFFENSES have been, are being, and will continue to be committed by JOSEPH and others known and unknown. There is probable cause to believe that JOSEPH is using TARGET

3

TELEPHONE 2 to commit the TARGET OFFENSES. I set forth the following facts showing there is probable cause to believe that the geographic location of TARGET TELEPHONE 2 will show evidence of violations of law as set forth in 21 U.S.C. §§ 841(a)(1), 843(b) and 846.

### E. **PROBABLE CAUSE**

8. In September 2014, members of the NOGTF, including officers from the New Orleans Police Department (NOPD), began investigating JOSEPH and his heroin supplier, DONALD EALY (aka "DEEBO"). A Confidential Informant (CI) had notified authorities that JOSEPH was dealing heroin for EALY, and that EALY was currently "laying low" after his brother's recent murder. The CI stated that JOSEPH sold heroin near the Lowes at the intersection of Elysian Fields Avenue near Interstate 10, New Orleans, Louisiana, and that he possibly lived in the St. Roch neighborhood. The CI informed agents that JOSEPH drove a gray Nissan Altima, Louisiana license YHN696. Through investigation, FBI learned that this car was registered to Linda Joseph, 2320 Spain Street, which is in the St. Roch neighborhood of New Orleans. The CI also stated that JOSEPH used TARGET TELEPHONE 1 to arrange heroin transactions.

9. The CI has received compensation for his/her assistance. In addition, the CI has a pending case involving charges of driving while intoxicated. The CI is cooperating with law enforcement in the hope that his/her assistance may be applied to pending charges against him/her, as well as pending charges against a separate individual who is closely associated with the CI. The CI has been made no promises with respect to these pending cases. CI is not known to have lied to law enforcement while working in a CI capacity. Information provided by the CI has proven reliable and credible, and has been corroborated by agents involved in this investigation.

10. On October 15, 2014, members of the NOGTF met with the CI for the purpose of conducting a $200.00 controlled purchase of heroin from JOSEPH. Under the direction of supervising agents, the CI texted JOSEPH at the TARGET TELEPHONE 1 number, "Can I come see you" and "Is it good!" JOSEPH replied via text, "Ok lowes" and "N yea." The CI ended the conversation by texting "200," meaning $200.00. Agents searched the CI and the CI's vehicle for contraband and other items. Both searches were met with negative results. Agents then provided the CI with $200.00 in recorded drug-buy money, and the CI departed for the Lowes located near the intersection of Elysian Fields Avenue and Interstate 10, New Orleans. In transit, the CI continued to text JOSEPH's TARGET TELEPHONE 1 regarding his/her whereabouts. Upon arrival at Lowes, the CI received a phone call from JOSEPH's TARGET TELEPHONE 1, whereby JOSEPH instructed the CI to come to St. Roch Avenue near the intersection of Florida Avenue, which is behind the Lowes. The CI met with JOSEPH near the intersection of Painters Street and Florida Avenue, just around the corner from St. Roch Avenue. At the time, JOSEPH was driving the gray Nissan Altima, bearing Louisiana license YHN696. JOSEPH had at least two unidentified individuals with him in the Altima. During their meeting, JOSEPH provided the CI with six baggies of heroin in exchange for the $200.00 in drug-buy money. The CI left JOSEPH and met with agents to turn over the evidence. The evidence field tested positive for heroin and weighed approximately 2.33 grams.

11. On October 24, 2014, members of the NOGTF met with the CI for the purpose of conducting another $200.00 controlled purchase of heroin from JOSEPH. Under the direction of supervising agents, the CI sent a text to JOSEPH at TARGET TELEPHONE 1, "U good." JOSEPH replied, "Yea." The CI then texted "Kk 2" (meaning $200.000) and "Same place?" JOSEPH replied, "Yea how long." The CI texted, "About 15," to which JOSEPH said, "K."

Agents searched the CI and the CI's vehicle for contraband and other items. Both searches were met with negative results. The CI departed for the same Lowes with $200.00 dollars of recorded drug-buy money to meet with JOSEPH. Again, JOSEPH contacted the CI from TARGET TELEPHONE 1 to direct him/her to the neighborhood (St. Roch) behind the Lowes. The CI again met JOSEPH in the nearby neighborhood. JOSEPH was driving the same Nissan Altima bearing the same license number. The CI and JOSEPH exchanged $200.00 in drug-buy money for six baggies of heroin. The CI met with agents after the transaction to turn over the evidence. The evidence field tested positive for heroin and weighed approximately 1.69 grams.

12.     In furtherance of the investigation into JOSEPH's narcotics trafficking activities, on October 29, 2014, agents obtained a search warrant to seize the REQUESTED INFORMATION for TARGET TELEPHONE 1 for a 30-day period. This period started on October 31, 2014, and ended on November 29, 2014. During this time, agents were able to use the REQUESTED INFORMATION to support additional controlled purchases of heroin from JOSEPH. The precision location information was useful to agents providing surveillance support during the controlled purchases, as well as assisted agents with identifying some of the locations used by JOSEPH.

13.     On November 5, 2014, the NOGTF met with the CI and with an assigned undercover police officer (UO), in order to discuss conducting a controlled purchase of heroin from JOSEPH. Under the direction of the agents, the CI contacted JOSEPH on TARGET TELEPHONE 1, and together with the UO, planned to meet with JOSEPH for the transaction. At approximately 1:10pm, the CI texted JOSEPH on TARGET TELEPHONE 1, "U good" and "Omy to lowes" and "10 min." The CI and UO were provided $200.00 in drug-buy money and outfitted with an audio recording device. The CI and UO then traveled together to the same

Lowes as in the previous controlled purchases. Through the use of precision location information, agents initiated physical surveillance of JOSEPH. At approximately 1:11pm, after the texts were sent by the CI, JOSEPH departed 2807 Freret Street, New Orleans, in the previously-described gray Nissan Altima, Louisiana license YHN696. At approximately 1:16pm, the CI and UO arrived at the Lowes parking lot. The CI texted JOSEPH at TARGET TELEPHONE 1, "I'm here," and JOSEPH replied, "K." JOSEPH was followed by agents to 2320 Spain Street, New Orleans. At approximately 1:35pm, JOSEPH called the CI using TARGET TELEPHONE 1 to instruct him/her to go to St. Roch Avenue. The CI and UO departed to St. Roch and called JOSEPH at TARGET TELEPHONE 1 when they arrived in the neighborhood. JOSEPH, who had departed 2320 Spain Street, met with the CI and UO near the intersection of N. Dorgenois Street and St. Roch Avenue, New Orleans. When JOSEPH approached the CI's car, the CI introduced the UO to JOSEPH. The UO then handed the CI the $200.00 in drug-buy money, and the CI handed the money to JOSEPH in exchange for six individually-wrapped baggies of brown powder. After departing the area, the six baggies were handed over to agents as evidence. The baggies weighed approximately 1.59 grams and field tested positive for heroin.

14. On November 13, 2014, at approximately 12:45pm, the UO contacted JOSEPH on TARGET TELEPHONE 1 and arranged for the purchase of $200.00 of heroin. The UO was provided with $200.00 in drug-buy money and was dispatched to the same Lowes parking lot to make contact with JOSEPH. The UO was provided with an audio and video recorder. At approximately 1:17pm, the UO texted JOSEPH at TARGET TELEPHONE 1, "hope you didn't forget about me." JOSEPH replied, "No I'm coming." At approximately 1:30pm, the UO received a call from JOSEPH on TARGET TELEPHONE 1, where JOSEPH explained that he

was with his parole officer and that he would "be there" in five minutes. During the call, JOSEPH provided directions to the UO to the intersection of Mandeville Street and N. Rocheblave Streets, New Orleans. The UO drove to the above intersection and met with JOSEPH, who was driving the same gray Nissan Altima, Louisiana license YHN696. JOSEPH was accompanied by a passenger in the car. JOSEPH came to the driver's side window and gave the UO six baggies of brown powder in exchange for the $200.00 in drug-buy money. The UO departed the area and turned over the evidence to agents. The brown powder field tested positive for heroin and weighed approximately 1.74 grams.

15. On November 20, 2014, at approximately 12:48pm, the UO contacted JOSEPH on TARGET TELEPHONE 1 and arranged for the purchase of $300.00 of heroin. The UO was provided with $300.00 in drug-buy money and was dispatched to the same Lowes parking lot to make contact with JOSEPH. The UO was provided with an audio and video recorder. After arriving at Lowes, the UO contacted JOSEPH on TARGET TELEPHONE 1 to tell JOSEPH that he/she was there. At approximately 1:00pm, the UO received an incoming call from JOSEPH, where JOSEPH confirmed that the UO wanted $300.00 of heroin, and explained that the heroin would come in one "chunk" instead of being individually bagged. The UO confirmed that the transaction would occur at the "same place as last time." The UO began traveling to the intersection of N. Rocheblave and Mandeville Streets. JOSEPH and the UO then had a final phone call on TARGET TELEPHONE 1 where JOSEPH gave the UO directions to go to the intersection of N. Miro and Mandeville Streets. Shortly after the UO arrived at that location, a black 2003 Infiniti sedan, Louisiana license YJY462, registered to Linda Joseph, 2320 Spain Street, New Orleans, pulled in front of the UO. An unknown black male with dreadlocks exited the passenger seat of the Infiniti, approached the passenger side of the UO's vehicle, and

exchanged a bag of brown powder for $300.00 in drug-buy money. The UO departed the area and turned over the evidence to agents. The brown powder, which was compressed in a chunk, field tested positive for heroin and weighed approximately 1.66 grams.

16. On December 18, 2014, at approximately 12:49pm, at the direction of agents, CI texted JOSEPH at TARGET TELEPHONE 1, "U good." JOSEPH responded from TARGET TELEPHONE 1, "Yea," to which CI responded, "K see ya soon." The CI was provided with $300.00 in drug-buy money, and outfitted with an audio recording device. Agents searched the CI and the CI's vehicle for contraband and other items. Both searches were met with negative results. The CI left the agents and arrived at the same Lowes parking lot at approximately 1:30pm. At approximately 1:46pm, surveillance units located JOSEPH driving the black 2003 Infiniti sedan, Louisiana license YJY426, at the intersection of Elysian Fields Avenue and Claiborne Avenue, New Orleans. Surveillance units followed JOSEPH from that location to 2320 Spain Street, New Orleans, where JOSEPH called the CI from TARGET TELEPHONE 1 to discuss how much heroin the CI would receive for $300.00. The CI then began traveling towards the St. Roch neighborhood to meet up with JOSEPH. Surveillance units observed JOSEPH depart 2320 Spain Street. The CI then saw JOSEPH's vehicle while driving in the St. Roch neighborhood. The CI followed JOSEPH's vehicle to the vicinity of Arts Street and Law Street, New Orleans. There, the CI exchanged the $300.00 for nine baggies of heroin. After departing the area, the nine baggies were handed over to the agents as evidence. The evidence field tested positive for heroin and weighed approximately 2.32 grams.

17. On January 13, 2015, the UO contacted JOSEPH on TARGET TELEPHONE 1 and arranged for the purchase of $200.00 of heroin. JOSEPH requested that the UO call when the UO was on his/her way to meet. The UO was outfitted with an audio and video recording

device. At approximately 1:04pm, the UO called JOSEPH at TARGET TELEPHONE 1 to tell JOSEPH that he/she was on the way. JOSEPH did not answer the call. A short time later, the UO received a call from TARGET TELEPHONE 2. The UO did not answer because the UO did not recognize the number. The UO then received a text from TARGET TELEPHONE 2, indicating, "This pretty." The UO understood JOSEPH's nickname to be "Pretty." The UO called back TARGET TELEPHONE 2, and JOSEPH answered. JOSEPH instructed the UO to call his new number (TARGET TELEPHONE 2) when the UO was close to the meeting spot. A short time later, the UO called TARGET TELEPHONE 2 and received directions from JOSEPH to go to the vicinity of Painters Street and North Galvez Street, New Orleans. The UO arrived at the location first. At approximately 1:30pm, JOSEPH arrived in the black 2003 Infiniti sedan, Louisiana license plate YJY462. An unknown black male with dreads exited the Infiniti and approached the driver's side of the UO's vehicle. The UO exchanged $200.00 for six baggies of heroin with the unknown male. The UO departed the area and met with agents to turn over the evidence. The baggies field tested positive for heroin and weighed approximately 1.31 grams.

18. Agents plan to continue to conduct controlled purchases of heroin with JOSEPH and with those associated with JOSEPH. The REQUESTED INFORMATION will be useful, *inter alia*, in future surveillance support, in understanding patterns and potential "stash" locations used by JOSEPH, and in developing additional suspects.

### F. AUTHORIZATION REQUEST

19. Based on the foregoing, there is probable cause to believe that JOSEPH is a narcotics trafficker, who has used the TARGET TELEPHONES in the course of his trafficking activities. The REQUESTED INFORMATION will constitute evidence regarding JOSEPH's narcotics trafficking activities. Ascertaining the physical location of the TARGET

TELEPHONES will assist law enforcement in conducting physical surveillance of JOSEPH before, during, and after the delivery of illegal drugs. The physical location of TARGET TELEPHONES will also assist law enforcement in identifying the location of contraband, load vehicles, stash houses, and co-conspirators.

20. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), it is requested that the Court issue a Warrant and Order authorizing agents of the FBI to obtain the REQUESTED INFORMATION for a period of thirty (30) days for both TARGET TELEPHONES.

21. IT IS FURTHER REQUESTED that the Court direct Sprint, the service provider for the TARGET TELEPHONES, to assist agents of the FBI by providing all information, facilities, and technical assistance needed to ascertain the REQUESTED INFORMATION described in Attachment B, and further direct Sprint to initiate a signal to determine the location of the TARGET TELEPHONES on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed warrant, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the TARGET TELEPHONES for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

22. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET TELEPHONES outside of daytime hours.

23. IT IS FURTHER REQUESTED that the warrant and this Affirmation, as it

reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the FBI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and Sprint as necessary to effectuate the Court's Order.

24. IT IS FURTHER REQUESTED that, pursuant to the preclusion of notice provisions of 18 U.S.C. § 2705(b) and 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation. Such a disclosure would give the subscriber an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee or continue his flight from prosecution.

Special Agent Robert Baird
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on February ___, 2015 at New Orleans, Louisiana.

UNITED STATES MAGISTRATE JUDGE